In re Ronnie P. WEINHOLD
and Sandra D. Berreth–
Weinhold, Debtors.

No. 05–43070–svk.

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 1, 2008.

Order Denying Reconsideration
Aug. 13, 2008.

Christopher S. Carson, Carson Law Office, Elm Grove, WI, Matthew R. Jelenchick, Niebler, Pyzyk, Klaver & Carrig, LLP, Menomonee Falls, WI, for Debtors.

## MEMORANDUM DECISION ON MOTION TO ENFORCE DISCHARGE INJUNCTION

SUSAN V. KELLEY, Bankruptcy Judge.

### Facts and Procedural Background

Ronnie P. Weinhold and Sandra D. Berreth–Weinhold (the "Debtors") filed a Chapter 7 bankruptcy petition on October 14, 2005. The filing stayed a pending suit by John Borowski against the Debtors in Milwaukee County Circuit Court ("Circuit Court"). The Circuit Court action arose out of the sale of a portion of the Debtors' property on Ryan Road to Borowski, an easement agreement affecting the property, and the Debtors' subsequent construction of a driveway on the easement. The claims included fraud, intentional infliction of emotional distress, unreasonable interference with Borowski's property interest, trespass, nuisance, breach of contract, harassment, and assault and battery.

The Debtors listed Borowski's claims to relating to the driveway dispute on their Schedule F (Creditors Holding Unsecured Nonpriority Claims). Borowski moved for relief from the stay to continue the Circuit Court lawsuit and also filed a Motion to Abstain. On February 17, 2006, this Court denied both Borowski's Motion for Relief from Stay and Motion to Abstain. Borowski filed an adversary complaint on March 9, 2005, alleging that the Debtors' debts to

Borowski were nondischargeable. With the consent of the parties, the Court set a hearing on the sole issue of whether the driveway constituted an actionable nuisance under Wisconsin law. The hearing took place on August 11, 2006. After reviewing the evidence, including expert testimony, the Court held that the driveway is not a nuisance under Wisconsin law. *See Borowski v. Weinhold (In re Weinhold)*, 347 B.R. 887 (Bankr.E.D.Wis.2006) (driveway is "petty annoyance" only and "[does not] rise to the level of substantial or unreasonable interference with Borowski's property rights").

On October 13, 2006, a new party entered the scene when The W Are A, LLC (the "LLC") was formed. Apparently, Borowski transferred his interest in the Ryan Road property to the LLC, although the Debtors have alleged that no deed has ever been recorded. The sole owner and operator of the LLC is Debran Erickson.[1]

The Debtors received a general discharge on November 27, 2006. After a trial on December 6 and 7, 2006, the Court dismissed Borowski's nondischargeability Complaint against the Debtors. Borowski appealed this decision to the District Court, and the appeal is pending. No. 2:07–CV–00090–CNC (E.D.Wis. Jan. 26, 2007).

On February 23, 2007, Borowski filed an amended complaint in the Circuit Court action. The LLC filed its own complaint on March 1, 2007. Both Borowski and the LLC allege that they are seeking damages against the Debtors for post-petition conduct. However, the majority of the claims in their respective complaints relate to the continuing existence of the driveway. One of the claims asserted by the LLC is that the driveway is a nuisance. The LLC argues that because the LLC was not formed until after the Debtors filed their petition, it was not a creditor, and thus is not enjoined from making this claim against the Debtors.

On June 2, 2008, the Debtors filed a Motion to Enforce Discharge Injunction and for Sanctions for Borowski's and the LLC's conduct in prosecuting the Circuit Court action. The Court took the matter under advisement and now issues this Memorandum Decision.

### Discussion

The Debtors seek to stop Borowski and the LLC from committing violations of the Bankruptcy Code's discharge injunction. The discharge injunction is created by 11 U.S.C. § 524(a) (the "Bankruptcy Code" or the "Code"), which states in relevant part:

A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

■■■ The Debtors bear the burden of proof on this Motion, and must prove the violation of the discharge injunction by clear and convincing evidence. *In re Pincombe*, 256 B.R. 774 (Bankr.N.D.Ill.2000). To sustain the burden in this case, the Debtors must first prove that the debt at issue was discharged. *In re Stoneking*, 222 B.R. 650 (Bankr.M.D.Fla.1998) (primary issue in action to enforce the § 524(a) injunction is whether the debt is one which was discharged); *In re Toussaint*, 259 B.R. 96 (Bankr.E.D.N.C.2000) (creditor's claim was not discharged, there-

---

**1.** Erickson was Borowski's girlfriend at the time the LLC was formed; apparently, they have since married.

fore no violation could occur). Once it has been determined that the debt was discharged, Borowski and the LLC may be held in contempt if they willfully violated the injunction. *In re Andrus,* 184 B.R. 311 (Bankr.N.D.Ill.1995). This burden is met by establishing that Borowski and the LLC (1) had knowledge of the post-discharge injunction; and (2) intended the actions which violated the injunction. *Hardy v. United States (In re Hardy),* 97 F.3d 1384 (11th Cir.1996) (creditor was in contempt of discharge injunction by attempting to collect discharged tax debt). Here, there is no question that Borowski and the LLC had knowledge of the discharge injunction, and that they intended to pursue the state court claims. The central issue, then, is whether the Debtors have proven that the claims that Borowski and the LLC continue to pursue in the Circuit Court action have been discharged.

Borowski and the LLC assert that the prosecution of the claims in the Circuit Court does not violate the Debtors' discharge for three primary reasons: (1) the claims do not seek to impose personal liability, but are merely *in rem* actions to determine property rights; (2) the LLC claims did not arise pre-petition, and therefore were not discharged; and (3) the claims related to the driveway are based on continuing torts (rather than permanent torts) and therefore new post-petition causes of action against the Debtors have accrued.

■ Before addressing the three core issues, this Court can eliminate some claims from the discussion. In the Circuit Court proceedings, Borowski claims that Mr. Weinhold "has engaged in repeated acts designed to harass, intimidate and inflict emotional distress on Borowski." Borowski Circuit Court Amended Complaint, ¶ 46. Such claims, if proven to have occurred post-petition, would not be dis-

charged in the bankruptcy. *See In re M. Frenville Co., Inc.,* 744 F.2d 332 (3d Cir. 1984).

### The Causes of Action as "Claims" Discharged in Bankruptcy

■ Section 101(5) of the Bankruptcy Code defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Additionally, the Code defines the term "debt" as "liability on a claim." 11 U.S.C. § 102(a)(12). The Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. [The definition of claim] permits the broadest possible relief in the bankruptcy court." S.Rep. No. 95–989, at 22 (1978). The Code specifically includes within the definition, "claim[s] against the property of the debtor." 11 U.S.C. § 102(2). A cause of action in tort is a claim under the Code. *See, e.g., Fogel v. Zell,* 221 F.3d 955 (7th Cir.2000) (customers' claims for defective pipe were claims in debtor's bankruptcy).

■ However, some causes of action are not claims subject to discharge. Where the only remedy available for a cause of action is an equitable remedy, including a "resulting trust, partition in kind, deed reformation, appointment of a receiver, and dissolution of a partnership," that claim is not dischargeable in bank-

ruptcy. *Sheerin v. Davis (In re Davis),* 3 F.3d 113, 116 (5th Cir.1993) (suit between shareholders for equitable remedy, with no money damage alternatives, was not dischargeable). The analysis turns on whether monetary payment is a "viable alternative" to an equitable remedy for a cause of action. *In re Ben Franklin Hotel Assoc.,* 186 F.3d 301 (3d Cir.1999) (general partner's demand for reinstatement is not a discharged claim). However, when certain rights against a debtor can be measured monetarily, those rights constitute a dischargeable claim. *In re Continental Airlines,* 125 F.3d 120 (3d Cir.1997), *cert denied,* 522 U.S. 1114, 118 S.Ct. 1049, 140 L.Ed.2d 113 (1998) (pilots' claims for seniority integration satisfied with monetary reward).

■ Here, Borowski and the LLC specifically seek "compensatory and punitive damages," along with a declaration that the easement agreement was an invalid conveyance. (Borowski Circuit Court Amended Complaint, ¶ 8). Monetary payment is not only a "viable alternative," according to Borowski and the LLC, but apparently their preferred remedy. Courts commonly award damages for trespass and nuisance instead of ordering specific performance. *See, e.g., Fogel v. Zell,* 221 F.3d at 958. Therefore, the claims related to the driveway are claims that may be discharged.

■ This finding does not end the inquiry, because a discharge does not extinguish all methods a creditor may use to enforce a claim. A discharge eliminates a creditor's ability to enforce an action against a debtor *in personam,* but an *in rem* action against the debtor's property may remain. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Following a debtor's discharge, liens on real property are not extinguished. A creditor may foreclose on a lien because a foreclosure action is generally an *in rem* proceeding. *Hunzinger Const. Co. v. SCS of Wis., Inc.,* 280 Wis.2d 230, 694 N.W.2d 487 (Ct.App.2005). But a creditor in an *in rem* proceeding cannot seek to impose personal liability on a property owner, and the property owner is not a proper party to an *in rem* action. *Id.* at 240, 694 N.W.2d at 491.

In *Peachtree Lane Assocs. v. Granader (In re Peachtree Lane Assocs.),* 175 B.R. 232 (N.D.Ill.1994), the debtor filed an adversary proceeding against adjoining landowners, seeking a declaratory judgment under an easement and to enjoin the neighbors from encroaching upon the debtor's property. The debtor claimed that the neighbors had installed 50 parking spaces in violation of the easement. The adjoining landowners filed counterclaims against the debtor, claiming that the debtor's parking lot was encroaching on their access road, and therefore violating the easement agreement. After a trial on the adversary proceeding, the bankruptcy court entered an order specifying the rights of the parties, and required the adjoining landowners to remove the parking spaces. On appeal, the district court affirmed the judgment of the bankruptcy court, concluding that it had correctly analyzed the ingress-egress easement. *In re Peachtree Lane Assoc.,* 206 B.R. 913 (N.D.Ill.1997). Under Borowski's *"in rem"* theory, the adjoining landowners in *Peachtree* would have been free to pursue the same claims about the debtor's violation of the easement after the conclusion of the bankruptcy, because the claims would not have been included in the discharge. This result is absurd.

■ Although it is true that a discharge does not extinguish *in rem* claims such as liens against the debtor's property, the claims here are not *in rem.* Rather Borowski's and the LLC's claims concern

the rights and obligations of the parties with respect to the easement agreement and allegedly encroaching driveway, similar to the situation in *Peachtree*. Borowski, and now the LLC, allege that the Debtors fraudulently entered into the agreement and failed to disclose it to Borowski. These claims relate to the rights and obligations between Borowski and the Debtors. In addition, the nuisance and trespass claims result from the conduct of the Debtors for the construction of the driveway, not as a result of an *in rem* interest that Borowski claims in the Debtors' property. Though Borowski and the LLC assert that many of their claims are *in rem*, their respective Circuit Court complaints name the Debtors as defendants, seek a determination of the rights of the parties to the easement agreement, and request damages for the pre-petition construction of the driveway by the Debtors. These are *in personam* claims, included in the bankruptcy discharge. The Court rejects Borowski's and the LLC's arguments that these claims are *in rem*, and finds that the Debtors have met their burden of proving the claims concerning the easement agreement and construction and existence of the driveway are subject to the discharge.

### The LLC Claims

 The LLC contends that any claims it now possesses were not discharged in the Debtors' bankruptcy, since the LLC did not exist at the time the Debtors' filed their bankruptcy petition. According to the LLC, its claims were not discharged because the claims did not arise pre-petition. However, in making this argument, the LLC misreads the Bankruptcy Code.

The Code defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 105(a)(10). As is evident from the definitions above, a *claim* must arise prior to the order for relief. Although it is certainly true that the LLC was not yet formed when the petition was filed on October 14, 2005, the *claims* the LLC now asserts were in existence at the time of the bankruptcy. Under Bankruptcy Code § 727(b), the Debtors were discharged "from all debts that arose before the date of the order for relief under this chapter."

The easement agreement was executed in March 2000, and the driveway constructed in November 2004. Accordingly there is no question that the claims the LLC now asserts existed prior to the October 2005 petition. Confusion can arise when the existence of a claim is in doubt. In *Fogel v. Zell*, a corporation produced defective pipe over the course of several years. 221 F.3d at 958. The corporation was later sold. The buyer corporation filed for bankruptcy due to lawsuits brought by individuals who had purchased the pipes that were beginning to fail. One of the parties who had sued, but who had not yet had any problems with the pipes, was not adequately notified of the claims bar date in the bankruptcy case. Once that party experienced damage due to the faulty pipes, it filed a claim in the bankruptcy. The *Fogel* court held that because it was not clear whether a claim had accrued at the time of the claims bar date, the party could not be barred from participating. *Fogel*, 221 F.3d at 960. The decision in *Fogel* illustrates that the accrual of a *claim* is what is dispositive for purposes of discharge, rather than an individual's status as a *creditor* at the time of a bankruptcy. *Fogel* does not stand for the proposition that the LLC must have creditor status at the time of the bankruptcy, as the LLC asserts.

In fact, claims are commonly transferred and assigned between creditors. *See* Fed. R. Bankr.P. 3001(c). A creditor who sells or transfers a claim to another is required to file evidence of the transfer with the bankruptcy court. *Id.*

The claims the LLC now asserts undeniably existed pre-petition. The Debtors constructed the driveway prior to the petition at the time Borowski owned the neighboring property. Borowski then transferred his interest in the property, and consequently his claim, to the LLC. Borowski and the LLC do not argue that the LLC was unaware of the claims against the Debtors. There is no doubt that these are pre-petition claims subject to the discharge injunction.

### Permanent or Continuing Nuisance or Trespass

 If the claims relating to the construction and continued existence of the driveway arose pre-petition, those claims have been discharged in the Debtors' bankruptcy. *See* 11 U.S.C. § 727(b). However, any claims that did not arise until after the Weinholds filed their Chapter 7 petition have not been discharged. Borowski and the LLC assert claims of two general types: trespass and nuisance. Although both are torts, they are distinguishable in that trespass is defined as wrongly interfering with possession of real property, while nuisance is wrongly interfering with the use and enjoyment of another's property. *See, e.g., Prah v. Maretti*, 108 Wis.2d 223, 232, 321 N.W.2d 182 (1982) (nuisance is a non-trespassory invasion which interferes with ones "use and enjoyment of land"). Both trespass and nuisance may be either continuing or permanent. Continuing trespasses and nuisances give rise to new causes of action when new injuries occur. In contrast, the damages from permanent nuisances and trespasses occur at the time of the event.

Therefore, if the torts at issue here are permanent, the claims arising from those torts have been discharged, but if a continuing nuisance or trespass exists, new post-petition causes of actions may have accrued which are not included in the discharge. Borowski and the LLC claim that the condition of the driveway (as higher than the LLC's driveway in certain places) and the extension of a portion of the driveway beyond the easement area by a few inches onto the LLC's land constitute continuing trespasses or nuisances, and accordingly are not discharged.

Although Wisconsin lacks a statute governing causes of action for permanent or continuing nuisances and trespass, Wisconsin courts recognize a difference between the two. *See, e.g., Kuhl v. Chicago & N.W. Ry. Co.*, 101 Wis. 42, 77 N.W. 155 (1898). The distinction is noted in *Stockstad v. Town of Rutland*, 8 Wis.2d 528, 99 N.W.2d 813 (1959), where the defendant municipality altered a roadbed causing a waterway to divert and flood the plaintiff's land. The flooding occurred periodically, and resulted in the contamination of the plaintiff's well water. The court determined that the claim arising from the periodic flooding stated a cause of action for a continuing nuisance. *Id.* at 532, 99 N.W.2d at 815. The nuisance the plaintiff complained of in *Stockstad* is distinguishable from the claims in this case. Here, the construction and existence of the driveway is the tort complained of. Unlike *Stockstad*, where flood waters periodically entered the plaintiff's land, the driveway's initial construction (including that portion that extends onto the LLC's property) caused a fixed amount of harm at the time of construction. The injury of the driveway does not vary over time, resulting in new damages.

The Wisconsin Court of Appeals has noted that "Wisconsin courts have not mean-

ingfully addressed the distinction between permanent and continuing nuisances." *Sunnyside Feed Co., Inc. v. City of Portage,* 222 Wis.2d 461, 588 N.W.2d 278 (1998). The *Sunnyside* court turned to other jurisdictions for guidance, and this Court shall too.

In *Devenish v. Phillips,* a case where a defendant's retaining wall and sprinkler supply lines encroached on the plaintiff's property, an Alabama appellate court aptly described the difference between continuous and permanent trespass:

> Our supreme court, in *Borland v. Sanders Lead Co.,* 369 So.2d 523 (Ala. 1979), discussed the concept of continuous trespass. The plaintiff in *Borland* raised cows on land adjoining land owned by the defendant; which operated a lead company. The defendant's smelting plant twice failed to function properly, causing a dangerous accumulation of lead particles and sulfoxide deposits on the plaintiff's property. The supreme court remanded the case to the trial court for a determination of whether the trespass was permanent or was continuing. If a trespass is permanent, damages must be recovered all at one time-past, present, and future. The measure of damage is the difference in the fair market value of the property before the trespass and the fair market value of the property after the trespass. The *Borland* court stated:

> "If the nature of the injury is continuous (i.e., during the tenure of the trespass), the plaintiff can recover for the use of his property or its fair rental value. (Also, plaintiff may be able to recover the cost of restoration if this, plus rental value, is less than the diminution in value.) Any damages for future loss must be recovered in a later action if and when a subsequent trespass occurs."

In *Borland,* if the smelting plant had malfunctioned after the first lawsuit, then the plaintiffs would have a new cause of action for the subsequent damage from the second malfunction. However, in the present case, the trespass resulted in a permanent change to the land, with a continuing harm. Because the retaining wall has produced a permanent injury to the land, Devenish's right was to full redress in a single action for the trespass, and he had no right to file successive actions.

We note that one remedy for a continuing trespass is a permanent injunction, which, in the present case, could provide a removal of the encroachment. However, money damages could also be appropriate. Devenish did not seek an injunction in his first action. He asked for and received money damages.

743 So.2d 492, 494 (Ala.Civ.App.1999) (internal citations omitted). Similar to *Devenish,* the driveway here is alleged to have produced a permanent injury to Borowski's land, and Borowski's right was to full redress in a single action for trespass or nuisance, not to file successive actions.

Another court found that the difference between the two types of trespass depends on the nature of the wrong. *Hebert v. City of Fifty Lakes,* 744 N.W.2d 226 (Minn.2008) (collecting cases). A permanent trespass "is one of such character under the circumstances that is will be presumed to continue indefinitely." *Id.* (quoting *Worden v. Bielenberg,* 119 Minn. 330, 138 N.W. 314, 315 (1912)). Moreover, when an interference with a property right and resulting damages occur at the same time, as opposed to a series of recurring injuries, a trespass is permanent. *Id.* (citing *Beer v. Minnesota Power & Light Co.,* 400 N.W.2d 732 (Minn.1987)). The nature of the driveway, a permanent concrete

structure, is a permanent trespass under this definition.

The supreme court of Kansas defined temporary damages as those that are "recoverable from time to time as they occur from injury." *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 15 P.3d 338, 344 (2000). Only when an injury is abatable *and* damages are temporary does a new cause of action accrue with each new injury. *Id.* The case provides a helpful example of temporary damages. Flood damages to crop land caused by structural alterations to nearby drainage ditches were not ascertainable at the time the structural alterations were made. The damages from flooding occurred intermittently, and no injury was caused to the land at the time of the structural alterations. *Id.* at 345. Periodic flooding caused temporary damages. *Id.* In this case, Borowski has complained about the driveway from day one. For example, the variation in height from the Debtors' driveway to Borowski's driveway was immediately apparent, and the alleged injury caused by the driveway is permanent, not intermittent.

In *Sunnyside*, the court reviewed California law on the issue. 222 Wis.2d at 469–70, 588 N.W.2d at 282. In that case, a city restored a canal bank behind a neighboring feed mill. The canal bank structure was altered, allowing sand and gravel to migrate out from under the mill, causing the foundation to settle over time. The court concluded that the harm was con-

tinuing because the damage was ongoing, in that the foundation was settling more and more. *Id.* at 483, 588 N.W.2d 278. The court relied on a California factor that said when harm is ongoing or repeated, the tort should be considered continuing. *Id.* at 470, 588 N.W.2d at 282.[2]

■ *Sunnyside, Devenish, Hebert, Borland,* and *Dougan* provide similar guidelines to identify whether a trespass is continuing or permanent. Where there is a permanent change to land, which results in an identifiable, static harm, the wrong is permanent. If there are recurring, intermittent injuries, each caused by a new instance of harm, the wrong is deemed continuous. A key inquiry under these authorities is whether interference with a property right occurred simultaneously with static damages. Under the *Dougan* rationale, the damages Borowski and the LLC complain of were fixed at the time the driveway was constructed because the injury occurred concurrently with the construction of the driveway. The alterations to the drainage ditches in *Dougan* were not wrongs in themselves and caused no injury to the landowner's property at the time of construction. Only the subsequent, intermittent flood waters that trespassed on the land caused the injury. In contrast here, the construction of the permanent driveway with its higher elevation than Borowski's driveway immediately caused the injury of which Borowski and the LLC complain and would constitute a permanent, not a continuing, nuisance.

**2.** The plaintiff in *Rahn v. Milwaukee Elec. Ry. & Light Co.* claimed that the foundation of an adjoining landowner, which extended five to nine inches over the property line, was a trespass. 103 Wis. 467, 79 N.W. 747 (1899). The Wisconsin Supreme Court, without discussion of the issue, found that "there can be no doubt but that the trespass complained of is a continuing one." *Id.* at 467, 79 N.W. at 748. But the court further suggested that the

trespass was permanent, by suggesting that a court of equity has "the power to settle, once and for all, the rights of the parties." *Id.* at 467, 79 N.W. at 748. The court did not ultimately decide the case. *Rahn's* ambiguous definition does not alter this Court's conclusion that the driveway and the alleged harm it creates is a permanent, rather than continuing, trespass.

Under this same analysis, the trespass caused by the wrongful construction of the driveway at any points where the driveway extends over the boundary of the easement is a permanent trespass, with damages fixed at the time of construction. The Court finds that the Debtors have met their burden of proving that the claims for the construction, condition and existence of the driveway are permanent, not continuing, torts that arose before the bankruptcy petition. Therefore, all claims related to the construction and existence of the driveway, including both the portion of the driveway situated on the easement which is higher than the neighboring driveway and any portion extending over the easement line onto the property currently owned by the LLC are subject to the discharge injunction.

### Fresh Injuries for Using the Sliver

█ One issue remains. As has been alluded to, at some points of the driveway, a small portion extends beyond the easement onto the LLC's property. Although the record is not clear, it appears that this encroachment—described as a "sliver"—is no more than 6 inches, and may be as little as 2–3 inches. Damages for the permanent injury to the land caused by the sliver's presence have been discharged, as explained above, but Borowski and the LLC contend that the Debtors are causing fresh injuries each time they use the driveway, because they are entering onto the sliver portion without Borowski's and the LLC's permission.

Borowski and the LLC rely on *Peeler v. MCI, Inc.*, 447 F.3d 992 (7th Cir.2006). In *Peeler,* an owner of a parcel of land in Indiana claimed that MCI's installation and operation of an underground fiber optic cable and fiber box on her land was a trespass. The district court refused to enjoin the construction of the cable, and the court of appeals later held that the landowner's claims arising from the existence and use of the cable (transmission of photons through the cable) were pre-petition and subject to the debtor's discharge. *Id.* at 993. Damages for the existence of the fiber box, a 15–square–foot structure built to enable MCI to access and maintain the cable, likewise were subject to discharge. But the court of appeals stated that if MCI entered onto the landowner's property to enter the fiber box, that intrusion could be a "fresh injurious act." *Id.*

*West v. Worldcom* reached the opposite conclusion, in another case where a landowner brought a trespass claim against the owner of a trespassing fiber optic cable. 2007 WL 3407060, 2007 U.S. Dist. LEXIS 83924 (S.D.N.Y. Nov. 14, 2007). In evaluating whether a fresh claim arose when the MCI entered the fiber box, the court said: "Because MCI's trespasses to perform maintenance on the fiber optic cable are 'ordinary and necessary to ensure that the cable is functioning properly,' they cannot be abated. Those trespasses are therefore part of the permanent damages caused by the original installation of the cable." (citing *Smith v. Branch*, 226 Ga. App. 626, 628, 487 S.E.2d 35 (1997) (trespass only continuing if damage could be abated)). *Id.* at 2007 WL 3407060, *4, 2007 U.S. Dist. LEXIS 83924, *10. The *West* court ruled that the injuries caused by continued maintenance of the cable were permanent and discharged just like the damages for the existence of the cable.

Though neither *Peeler* nor *West* is exactly analogous to this case, *Peeler* stands for the proposition that new trespasses result in the accrual of new causes of action, at least under Indiana law, while *West* holds that new trespasses that are ordinary and necessary to the use of a permanent encroachment do not create new causes of action under Georgia law. Wisconsin, as the court in *Sunnyside* noted, does not

have a significant body of case law on continuing and permanent trespasses. *See Sunnyside*, 222 Wis.2d at 468, 588 N.W.2d at 278. None of the Wisconsin cases reviewed by the Court provide any guidance on whether new injuries are created when the Debtors drive on the driveway and utilize the sliver that encroaches onto the LLC's land. Arguably, a Wisconsin court could find that using the driveway for its stated purpose (driving to and from the Debtors' home) is part of the permanent trespass, like the transmission of the photons through the fiber optic cable in *Peeler* and *West*. The court could follow *West* and find that since use of the driveway cannot be abated, the use of the sliver is part of the permanent trespass. Or, the court could determine that each use of the sliver without the LLC's permission is a new trespass, like the entry into the fiber box in *Peeler*. Since the Court is unable to determine whether a Wisconsin court would consider the use of the sliver a new trespass, the Court cannot conclude that this claim is included in the discharge injunction.

To be clear, this Court is not ruling that the claims for the existence of the sliver survived the discharge; they did not. For example, a claim to require the Debtors to remove the sliver or to determine that Borowski or the LLC are entitled to remove the sliver should not be pressed in the Circuit Court, as those claims are part of the permanent trespass and have been discharged. However, the claims against the Debtors for *entering on* the sliver may have survived the discharge, if the Wisconsin court follows the *Peeler* rationale rather than the *West* reasoning. Even if the state court follows *Peeler*, it is hard to believe that Borowski or the LLC have suffered any damages whatsoever from the Debtors' driving on the 3–6 inch encroachment. However, since the claim for driving on the sliver may have survived the

discharge, the Debtors did not carry their burden of proof that Borowski and the LLC violated the discharge injunction in bringing this claim.

### Conclusion

After carefully considering the facts and relevant law, the Court concludes that the only claims raised in the Circuit Court litigation that have survived the Debtors' discharge are those claims for post-petition harassment by Mr. Borowski against Mr. Weinhold and the claims of Borowski and the LLC for the Debtors' entry onto the sliver of the driveway that extends beyond the easement boundary. The claims for the existence and condition of the driveway (including the sliver) and the claims for use of the driveway in the easement area are all in the nature of permanent trespass or permanent nuisance, and since those claims arose pre-petition, they are discharged. Borowski and the LLC must limit their prosecution of the Circuit Court action (and any other actions in any court) to the claims for post-petition harassment and use of the sliver, or they will be violating the discharge injunction.

As this Decision was being finalized, the Court became aware that Borowski had filed a Chapter 7 bankruptcy petition on July 2, 2008, about a week after the hearing on the Debtors' Motion to Enforce the Discharge Injunction. This petition was not brought to my attention by Borowski or the Debtors, but it raises the question of whether the automatic stay in Borowski's case stays the issuance of this Decision. (The LLC has not filed bankruptcy, so there is no stay of the proceedings against the LLC). Since the Decision requires only that Borowski comply with the Debtors' discharge order by curtailing his claims against the Debtors in the Circuit Court, I do not consider that the entry of this Decision is stayed by Borowski's

bankruptcy. I am not at this time imposing any monetary sanctions against Borowski, but if he continues to pursue the discharged claims, then such sanctions will be considered. Moreover, I note that Borowski's claims against the Debtors (for post-petition harassment and use of the sliver) now belong to his Chapter 7 trustee.

A separate Order will be entered granting the Debtors' Motion to the extent stated in this Decision.

## DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION

On June 2, 2008, the Debtors, Ronnie and Sandra Weinhold, filed a Motion to Enforce the Discharge Injunction seeking sanctions against John K. Borowski and the W Are A, LLC (the "LLC"). The Motion, supported by an Affidavit, briefs and dozens of documents, alleged that Borowski and the LLC were continuing to prosecute a Milwaukee County Circuit Court action concerning a driveway constructed by the Debtors; the Debtors contend that the claims relating to the driveway (constructed pre-petition) had been discharged in the Debtors' Chapter 7 bankruptcy. Borowski and the LLC responded, arguing that the claims raised in the Circuit Court do not seek to impose personal liability on the Debtors (i.e., they are *in rem* claims, similar to a lien), that the LLC's claims were not discharged because the LLC was not in existence when the petition was filed (Borowski's property was transferred to the LLC during the pendency of the Debtors' bankruptcy), and that the claims arise from the Debtors' post-petition interference with Borowski's property rights, as exemplified by *Peeler v. MCI, Inc.*, 447 F.3d 992 (7th Cir.2006). The Court held a hearing at which the parties presented legal argument, and took the matter under advisement.

On August 1, 2008, the Court issued a Memorandum Decision ("Decision") and corresponding Order rejecting Borowski's and the LLC's arguments, and holding that the claims for the existence and condition of the driveway (including a "sliver" that extends beyond the easement boundary onto Borowski's land) are claims for permanent, not continuing, trespass or nuisance, and were discharged in the Debtors' bankruptcy. The Court addressed and distinguished the Wisconsin case *Stockstad v. Town of Rutland*, 8 Wis.2d 528, 99 N.W.2d 813 (1959), finding that case involved a continuing, not permanent nuisance. The Court specifically rejected Borowski's *"in rem"* argument, analyzed the *Peeler* case, and concluded that, under the Seventh Circuit's reasoning, Borowski's and the LLC's claims for the Debtors' *use* of the sliver (but not for the construction of the sliver or the encroachment of the sliver onto the neighboring land) may have survived the discharge. The survival of the sliver-use claim depended on whether the Milwaukee Circuit Court followed the Indiana law enunciated in *Peeler* or the Georgia authority of *West v. Worldcom*, 2007 WL 3407060, 2007 U.S. Dist. LEXIS 83924 (S.D.N.Y. Nov. 14, 2007). Borowski has also alleged that Mr. Weinhold harassed him after the petition was filed. The Court held that Borowski's claims against the Debtor for post-petition harassment would have survived the discharge injunction.

In the August 1, 2008 ruling, the Court noted that as the Decision was being finalized, a review of the Court dockets revealed that Borowski had filed his own Chapter 7 petition. Accordingly, under § 541 of the Bankruptcy Code, Borowski's claims against the Debtors are property of the bankruptcy estate, and under § 323 of the Code, Borowski's bankruptcy trustee

now is vested with the sole ability to prosecute Borowski's claims.

On August 13, 2008, Borowski and the LLC each filed identical Motions to Reconsider, and in the Motion also asked for a stay of the Court's Decision and Order pending appeal, and for an extension of the appeal period on behalf of Borowski's trustee. The Reconsideration Motion states that "Helen M. Ludwig, trustee of Borowski's bankruptcy estate joins in the motion to the extent it pertains to potential claims of the estate and the time for filing a notice of appeal." However, Borowski's attorney is not authorized to represent the bankruptcy trustee, and the Motion is signed only by the attorney for Borowski and the LLC. *See* 11 U.S.C. § 327. If she wants relief, the trustee, the only one with standing to prosecute the claims of Borowski's bankruptcy estate, must file her own Motion. Accordingly, Borowski's Motion to Reconsider, for a stay pending appeal and to extend the time for filing an appeal cannot be granted. However, since the LLC has filed the identical reconsideration Motion, seeking the exact same relief, and the LLC has not filed bankruptcy, the Court will address the merits of the Motion to Reconsider.

 Bankruptcy Rule 9023, making Rule 59 of the Federal Rules of Civil Procedure applicable to cases under the Bankruptcy Code, allows a party to file a motion to amend a judgment within ten days of the entry of the judgment. However, Motions to reconsider serve a limited function: "to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir.1985). As Judge Stadtmueller recently explained: "Thus it follows that Rule 59(e) motions must clearly establish that such an error has occurred; they are not appropriate to simply revisit old arguments, or

present new arguments that could have properly been considered prior to the judgment." *O'Neill v. United States*, 2008 U.S. Dist. LEXIS 44818, *1–2 (E.D. Wis. June 9, 2008), *citing Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996). As grounds for its Motion, the LLC claims that the Court committed a manifest error of law. A manifest error of law is one that shows a "complete disregard of the controlling law." Black's Law Dictionary 582 (8th ed.2004). The Seventh Circuit Court of Appeals has instructed:

A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983).

 Judge Squires of the Bankruptcy Court in the Northern District of Illinois summarized the purpose of a Motion under Bankruptcy Rule 9023:

The function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. Moreover, the purpose of such a motion is not to give the moving party another "bite of the apple" by permitting the arguing of issues and procedures that could and should have been raised prior to judgment. The rulings of a bank-

ruptcy court are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants. The decision to grant or deny a Rule 59(e) motion is within the Court's discretion.

*In re Ross,* 377 B.R. 599, 602 (Bankr. N.D.Ill.2007) (internal quotations and citations omitted).

█ In light of these authorities, the Motion to Reconsider will be denied. All of the arguments in the Motion have been made (and rejected) before, the cases cited by the LLC in support of reconsideration were analyzed and distinguished in the Decision, and while the LLC may disagree with the Court's reasoning, that disagreement does not equate to a manifest error of law.

The LLC first argues that the declaratory judgment claims do not fall within the discharge injunction because they "only seek a determination of property rights, not personal liability for any debts." Accordingly, the LLC posits that these are not "claims" under § 101(5) of the Bankruptcy Code. This argument was considered and rejected in the Decision, and the Court held that the discharge specifically includes "claim[s] against the property of a debtor." 11 U.S.C. § 102(2). Moreover, the Court noted that within the very broad definition of claims, the Bankruptcy Code includes equitable and legal causes of action. 11 U.S.C. § 101(5). The Court cited *Peachtree Lane Assocs. v. Granader (In re Peachtree Lane Assocs.),* 175 B.R. 232 (Bankr.N.D.Ill.1994), in which claims concerning the debtor's alleged violation of an easement were litigated in the bankruptcy court, and that court's determination was

affirmed on appeal. The claims in *Peachtree,* so similar to those made here, did not survive the debtor's discharge. The Court also addressed and dismissed the LLC's comparison of its property rights to a lien. The *in rem* nature of a lien against the debtor's property that survives a bankruptcy discharge simply does not equate to the LLC's claim that it is entitled to remove the portion of the Debtors' driveway that encroaches on the LLC's property.

If the LLC were right, the plaintiff's claims in *Peeler* for the fiber optic cables or the fiber box constructed on the plaintiff's property would have survived the debtor's bankruptcy. Instead, the Seventh Circuit Court of Appeals held that those claims were discharged. The only claims that potentially remained were the plaintiff's claims for "fresh injuries" created when MCI entered the fiber box to repair the cables. The plaintiff in *Peeler* had the same *"in rem"* rights as the LLC claims here, but because of the nature of the encroachment as a permanent trespass which arose prior to the petition, the claims for that encroachment were discharged. While the LLC apparently disagrees with the Court's reasoning, the LLC has not presented new controlling authority, and has not shown that the Court "misapprehended" what the LLC was arguing. The Court indeed considered the argument that a determination of property rights rather than a claim for personal liability was being sought by the LLC and Borowski, and the Court decided that under these circumstances, such a property-right determination is a "claim" under the Bankruptcy Code. The claim arose pre-petition and has been discharged. As such no manifest error of law has been committed.

The LLC asks the Court to re-evaluate the Court's conclusion that the claim is a pre-petition permanent nuisance claim, not

a post-petition continuing nuisance claim. The Motion to Reconsider cites *Stockstad* and *Sunnyside Feed Co. v. City of Portage,* 222 Wis.2d 461, 588 N.W.2d 278 (1998), arguing that those cases are dispositive on the issue, and therefore the Court's reliance on cases from other jurisdictions was improper. *Sunnyside,* however, stated that review of authorities from outside Wisconsin is entirely appropriate because Wisconsin courts have not "meaningfully addressed" the distinction between permanent and continuing nuisances. The Decision analyzed the difference between permanent and continuing nuisance, including *Stockstad* and *Sunnyside.*

The complaint in *Stockstad* specifically alleged a "continuing nuisance." Under the definition of continuing nuisance, the court in *Stockstad* correctly notes that "every continuance of a nuisance is in law a new nuisance and gives rise to a new cause of action." 8 Wis.2d at 534, 99 N.W.2d 813. Borowski and the LLC have repeatedly seized on this quote to justify their continued prosecution of the claims against the Debtors. However, the instant case involves a permanent nuisance, not a continuing nuisance. As noted by the Supreme Court: "Where a nuisance to real property results from a structure which is in character relatively enduring and not likely to be abated either voluntarily or by order of a court, it is frequently held that the nuisance is a permanent one; and if the prospective damages resulting therefrom can be estimated with reasonable certainty, the diminution in the value of the property is immediately recoverable as damages." *Harrisonville v. W.S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 340, 53 S.Ct. 602, 77 L.Ed. 1208 (1933). The driveway here is a "structure" that is "relatively enduring" and the damages, if any, could be determined by estimating the value of the LLC's property before and after the construction of the driveway.

*Sunnyside* cites *Bartleson v. United States* to describe the difference between a continuing and permanent nuisance, and that case in turn cites *Baker v. Burbank–Glendale–Pasadena Airport Auth.,* in which the court explained:

> [P]ermanent nuisances are of a type where by one act a permanent injury is done, and damages are assessed once for all. The cases finding the nuisance complained of to be unquestionably permanent in nature have involved *solid structures, such as a building encroaching upon the plaintiff's land, a steam railroad operating over plaintiff's land or regrade of a street for a rail system.* In such cases, plaintiffs ordinarily are required to bring one action for all past, present and future damage within three years after the permanent nuisance is erected. The statutory period is shorter for claims against public entities. Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence. . . .

> On the other hand, if a nuisance is a use which may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance is abated. Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable.

> The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as the one before us today, caused by noise, vibration or foul odor.

39 Cal.3d 862, 218 Cal.Rptr. 293, 705 P.2d 866, 870–871 (Cal.1985) (emphasis supplied, internal quotations and citations omitted). The driveway here is much closer to the examples of permanent nuisance described by the *Baker* court, such as an

encroaching building or re-graded street, than the intermittent disturbances created by noise, odors or vibrations. In short, this Court did analyze the Wisconsin authorities in its Decision, including the cases from other jurisdictions relied on by the Wisconsin courts, and concluded that this permanent structure (a driveway) about which Borowski complained from the first day of construction, constitutes a permanent nuisance, not a continuing nuisance. The LLC's argument that the Court's determination of a permanent nuisance is a manifest error of law is nothing more than dissatisfaction with the result.

Finally, the LLC argues that the claims for post-petition interference with its property rights are not grounded in trespass or nuisance, but rather in easement law. "The claims seek compensation for the Weinholds' post-petition interferences with the exercise of those easement rights and are therefore claims for post-petition injurious acts." The LLC cites *Peeler* in support of this proposition. First, it is not clear that Borowski or the LLC *have* easement rights, the Debtors have the easement on the property now owned by the LLC. More importantly, whether the LLC labels its claims "easement law violation," trespass or nuisance, the claims arise from the same conduct. The claims all arose *pre-petition when the Debtors constructed* a driveway on an easement on Borowski's (now the LLC's) land. Borowski claimed the Debtors did not disclose the easement when he bought the land, and also complains that the Debtors' driveway is higher than his adjacent driveway, causing dangerous conditions and damaging his ability to sell his property. In some areas, the driveway apparently extends a few inches beyond the easement boundary onto the LLC's land. The Court analyzed the claims arising from these facts (and the others raised in the Circuit Court action and nondischargeability litigation that Bo-rowski filed in this Court) and concluded that, except with respect to the Debtors' use of the "sliver," the claims are pre-petition claims as defined by the Bankruptcy Code and included in the discharge. Borowski's and the LLC's claims related to the Debtors' alleged violation of Wisconsin easement law were considered, analyzed and (except possibly for trespassing beyond the boundary of the easement) rejected in the Decision. The *Peeler* case on which the LLC relies for this argument was thoroughly discussed in the Decision, and, in fact, relied upon by the Court in its finding that the claims related to the existence of the driveway (like the claims for the existence of the fiber box and buried cables) are discharged.

After due consideration of the contentions made in the Motion for Reconsideration in light of the rule that such a motion should only be advanced in limited circumstances, and not used, as here, as a vehicle to rehash old arguments which have already been considered and rejected, the Motion must be denied. The Motion also seeks a stay pending appeal and an extension of the appeal period for 20 days for Borowski's trustee. There is no appeal of the Decision pending, and a request for a stay pending appeal is premature. Bankruptcy Rule 8002(b)(2) provides that the 10–day appeal period for all parties will run from the entry of this Order. If the trustee needs more time, she should file a request under Bankruptcy Rule 8002(c).

IT IS THEREFORE ORDERED: that the Motions to Reconsider, for any and all stays, and for an extension of the appeal period are denied. This Order applies with equal force to the Motion filed by Borowski and the Motion filed by the LLC.