**In re Timothy J. BATES and Cathy N. Bates, Debtors.**

**Timothy J. Bates and Cathy N. Bates, Plaintiffs,**

**v.**

**CitiMortgage, Inc. s/b/m to ABN AMRO Mortgage Group, Inc., and Federal Home Loan Mortgage Corp., Defendants.**

**Bankruptcy No. 08–13522–JMD. Adversary No. 13–1043–JMD.**

United States Bankruptcy Court, D. New Hampshire.

Signed Sept. 23, 2014.

---

Terrie Harman, Portsmouth, NH, for Plaintiffs.

Andrea V. Lasker, Harmon Law Offices, P.C., Newton, MA, for Defendants.

## ORDER

J. MICHAEL DEASY, Bankruptcy Judge.

The Court held a hearing on cross-motions for summary judgment filed by Timothy J. and Cathy N. Bates (the "Plain-

tiffs"), who seek only partial summary judgment on the issue of liability (Doc. No. 59) (the "Plaintiffs' MSJ"), and by Citi-Mortgage, Inc. s/b/m to ABN AMRO Mortgage Group, Inc. ("Citi") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively the "Defendants") (Doc. No. 52) (the "Defendants' MSJ") (together, the "Cross–Motions"). The Court previously ruled on an earlier motion for partial summary judgment filed by the Plaintiffs (Doc. No. 22), which the Court denied (Doc. No. 49) (the "MSJ Order").[1] At the hearing on the Cross–Motions, the parties stipulated that the Court could consider the record submitted in connection with the Plaintiffs' previously denied motion for summary judgment in addition to the record submitted with the Cross–Motions.

The Plaintiffs' First Amended Complaint Dated August 1, 2013 (Doc. No. 12) (the "Complaint") contains six separate counts against Citi (Counts I, II, III, IV and VI) and Freddie Mac (Count V). Each of the counts allege a separate violation of the discharge injunction in violation of 11 U.S.C. § 524(a) and seek to hold the Defendants in contempt of the discharge injunction pursuant to 11 U.S.C. § 105(a). The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

As previously explained in the MSJ Order,

> In order to prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Baltodano v. Merck, Sharp, and Dohme (I.A.)*

*Corp.*, 637 F.3d 38, 41 (1st Cir.2011). A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law. *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). *OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada*, 684 F.3d 237, 241 (1st Cir.2012).

■ A creditor violates the discharge injunction when it (1) has notice of the discharge of a debtor, (2) intends the actions which constitute the violation, and (3) acts in a way that improperly coerces or harasses the debtor. *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6 (1st Cir. BAP 2009). Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case. *Pratt v. Gen. Motors Acceptance Co. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir.2006).

### COUNT I

■ Count I alleges that Citi violated the discharge injunction in § 524(a)(2) when it sent monthly statements to the Plaintiffs in April, May and June of 2009, April and December of 2010, and January and February of 2011, "which contained a 'past due amount' and a late charge, and requested payment; otherwise a new late charge would be assessed, in addition to, as to some, 'delinquency expenses.'" The facts surrounding the sending of the statements in question, their receipt by the Plaintiffs and their content are not in dispute.

In the Plaintiffs' MSJ they contend that "[g]iven their format and language contained therein, the statements *were coer-*

---

**1.** In drafting this order, for ease and efficiency, the Court has drawn heavily from the language of the MSJ Order.

*cive in and of themselves.*" The Court disagrees that the statements were "coercive in and of themselves." Acts in the ordinary course of business in furtherance of collection of periodic payments associated with a valid mortgage on a personal residence are expressly permitted under the Bankruptcy Code. 11 U.S.C. § 524(j). Accordingly, sending monthly statements to the Plaintiffs by Citi is not *per se* a violation of the discharge injunction in § 524(a)(2). The Plaintiffs acknowledge that the provisions of § 524(j) limit the scope of the discharge injunction against creditors such as Citi when seeking periodic payments on a residential home mortgage. However, the Plaintiffs contend that this provision does not immunize Citi from the terms of the discharge injunction or liability for violations of the discharge injunction.

Contrary to the Plaintiffs' assertions, the summary judgment record does not demonstrate that the Defendants were attempting to collect the discharged debt from the Plaintiffs personally. The statements in question all contained language in capitalized letters in the middle of the first page, immediately under the Plaintiffs' names and address and the heading "Important Messages," as follows:

THIS MORTGAGE ACCOUNT STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY, AS THIS DEBT MAY HAVE BEEN INCLUDED IN A BANKRUPTCY ACTION OR MAY HAVE BEEN DISCHARGED. THIS IS NOT AN ATTEMPT TO COLLECT, RECOVER, OR OFFSET THE MORTGAGE INDEBTEDNESS AGAINST YOU PERSONALLY.

When viewed objectively, these statements should have made it clear to the Plaintiffs that the statements were being provided "for informational purposes only," that the debt at issue "may have been discharged," and that Citi, by sending these statement,

was "not [making] an attempt to collect … against [the Plaintiffs] personally." For that reason, the Court finds that Citi's actions in sending monthly mortgage statements did not violate the discharge injunction. Accordingly, the Court hereby denies the Plaintiffs' request for partial summary judgment on Count I and grants the Defendants' request for summary judgment on Count I.

### COUNT II

■ Count II alleges that Citi violated the discharge injunction by attempting to collect discharged debts in a letter to the Plaintiffs dated September 22, 2009. Specifically the letter in question forwarded to the Plaintiffs a Loan Modification Agreement. The Complaint alleges that two provisions of the letter violated the discharge injunction. First, the letter stated that $12,362.16 in delinquent interest had been added to the principal balance. Second, the letter indicated that a signed and notarized Loan Modification Agreement, plus certified funds in the amount of $1,871.87, must be sent to Citi and received in its offices on or before October 19, 2009, in order to accept the terms of the proposed Loan Modification Agreement. The parties agree that the letter in question was sent by Citi and that it contained the language cited in Count II.

The summary judgment record reflects that the Plaintiffs signed the Loan Modification Agreement and made all required payments under its terms through November of 2010. The Plaintiffs learned in September of 2010 that Citi was not reporting their periodic payments to any credit bureau and were told by Citi that it was not required to report such payments because they had not reaffirmed the debt to Citi during the bankruptcy proceeding. The Loan Modification Agreement sent to the Plaintiffs by Citi and executed by them also contained a one page Modification

Bankruptcy Disclosure Rider that amended the terms of the Loan Modification Agreement as follows:

> [Plaintiff] represents that [Plaintiff] was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Note and Security Instrument. [Plaintiff] and [Citi] acknowledge and agree that the Loan Modification Agreement does not affect the discharge of the [Plaintiff's] personal liability on the debt.

The Plaintiffs allege that, by trying to collect the two amounts described above, Citi was attempting to collect discharged debt in a coercive and harassing manner. Citi contends that, after the bankruptcy discharge, the loan was in default and that it had the right to proceed with a foreclosure of its mortgage on the home. In order to avoid the foreclosure, the Plaintiffs agreed to the terms of the Loan Modification Agreement, which by its express terms did not revive any personal liability for the mortgage debt. The summary judgment record reflects no material dispute of these facts.

In their revived request for partial summary judgment on Count II, the Plaintiffs do not present any new evidence that, when viewed objectively, would demonstrates that the Plaintiffs were coerced or harassed into paying a discharged debt, when they executed and thereafter complied with the terms of the Loan Modification Agreement. Rather, it appears that the parties specifically agreed that the agreement did not constitute a reaffirmation or revival of the Plaintiffs' personal liability discharged in bankruptcy. Citi contends, and the Plaintiffs do not dispute, that the agreement was proposed and entered into as an alternative to the exercise of its foreclosure rights.

> Because the Debtor[s] wanted to retain [their] home, the Debtor[s] had every incentive to keep the payments on the mortgage current in order to avoid fore-closure by the Defendant. As the First Circuit Court of Appeals has explained:
>
> > [A] debtor whose home is at stake is in an unenviable position. But a Chapter 7 discharge is not a walk in the park; it is 'a benefit that comes with certain costs.' ... If the debtor surrenders his home, he is entitled to erase all his debts (secured and unsecured) and start afresh. If, however, his paramount interest is in keeping his home and he cannot redeem the collateral, he must come to terms with the mortgagee. Bankruptcy, as life itself, is a series of tradeoffs.

*Manning v. CitiMortgage, Inc. (In re Manning)*, 505 B.R. 383, 387–88 (Bankr. D.N.H.2014) (quoting *Jamo v. Katahdin Fed. Credit Union*, 283 F.3d 392, 400 (1st Cir.2002)).

Accordingly, the Court finds that the letter in question, and the Loan Modification Agreement itself, come within the provisions of the contact permitted post-discharge under § 524(j). For that reason, the Court hereby denies the Plaintiffs' request for partial summary judgment with respect to Count II and grants the Defendants' request for summary judgment on Count II.

### COUNT III

■ Count III alleges that Citi violated the discharge injunction by attempting to collect a discharged debt through the Loan Modification Agreement. The summary judgment record reflects no material factual dispute regarding the negotiation, execution and relevant terms of the Loan Modification Agreement. The Loan Modification Agreement was proposed by Citi at the request of the Plaintiffs in order to prevent the loss of their home through a foreclosure. The agreement modified the terms of payments that Citi would require to stop foreclosure actions. The Loan

Modification Agreement contained a separate one page rider that specifically provided that the Plaintiffs and Citi agreed that the Loan Modification Agreement did not affect the Plaintiffs' discharge of their personal liability on the debt to Citi.

The Plaintiffs made significant aggregate payments under the terms of the Loan Modification Agreement over a period of approximately one year. The Plaintiffs ceased making payments when they learned that their payments had not been, and would not be, reported to credit reporting agencies because the Plaintiffs had not reaffirmed the debt. After the Plaintiffs defaulted on their payments under the Loan Modification Agreement, Citi exercised its lien rights under the mortgage and foreclosed on the Plaintiffs' residence. In their affidavits filed in support of their MSJ, the Plaintiffs state they felt "compelled to make payments" under the Loan Modification Agreement and contend further that they did not make payments pursuant to the Loan Modification Agreement "voluntarily" but rather "primarily out of fear that we would owe CitiMortgage more than the remaining debt if we default on the [Loan Modification Agreement]." The Court finds that Citi's collection of payments under the Loan Modification Agreement fall within the provisions of § 524(j)(3) which permits creditors, such as Citi, to take action "seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." Because the acts complained of in Count III fall within those permitted under the Bankruptcy Code, the Court hereby denies the Plaintiffs' request for partial summary judgment with respect to Count III and grants the Defendants' request for summary judgment as to Count III.

### COUNT IV

Count IV alleges that Citi violated the discharge injunction by not reporting payments under the Loan Modification Agreement to credit reporting agencies and by denying the Plaintiffs online access to their account. There is no material factual dispute in the summary judgment record that the reason that Citi did not report the Plaintiffs' payments under the Loan Modification Agreement to credit reporting agencies was that they had not reaffirmed the debt. Even assuming that the evidence in the summary judgment record regarding Citi's failure to report such payments is admissible, there is no evidence that Citi did more than state the reasons for its inaction. While the Debtors "felt" that Citi was "simply harassing us into signing another agreement that would make us personally liable for the debt," there is no evidence in the summary judgment record that Citi suggested or attempted to obtain a reaffirmation agreement from the Plaintiffs at this time. The Plaintiffs cite no authority imposing any requirement on Citi to report the payments under the circumstances of this case.

The same analysis applies to the denial of online account access to the Plaintiffs.[2] The Plaintiffs' payments to Citi under the Loan Modification Agreement were voluntary. They were free to stop at any time, which they eventually did. When payments stopped, Citi did not seek to collect from the Plaintiffs personally. It simply exercised its rights under the mortgage it held on the Plaintiffs' residence. Nothing in the summary judgment record establishes any factual or legal basis for liability for violating the discharge injunction under the allegations in Count IV. Accordingly, the Court hereby denies the Plaintiffs'

---

**2.** The Plaintiffs acknowledge that Citi "was within its rights" to deny the Plaintiffs online access and to decline to report their payments.

request for partial summary judgment with respect to Count IV and grants the Defendants' request for summary judgment on Count IV.

## COUNT V

█ Count V alleges that Freddie Mac violated the discharge injunction by attempting to hold the Plaintiffs personally liable, post-discharge, for the mortgage debt through the issuance of an Internal Revenue Service ("IRS") Form 1099–A in connection with the foreclosure. The Form 1099–A had Box 5 checked, which per the form's instructions, should be checked "[i]f the borrower was personally liable for repayment of the debt at the time the debt was created or, if modified, at the time of the last modification." The Plaintiffs contend that they were not personally liable on the debt at the time of the foreclosure and therefore the box was erroneously checked.

The Plaintiffs equate the filing of the Form 1099–A with the IRS, and its delivery to the Plaintiffs, as an attempt by Freddie Mac and/or Citi to force the Plaintiffs to either pay the discharged debt or suffer federal tax consequences. However, the summary judgement record contains no factual allegations of any conduct by Freddie Mac beyond delivery of the Form 1099–A to the Plaintiffs. Form 1099–A is an IRS form. Freddie Mac filled in the information required by the IRS (erroneously, according to the Plaintiffs) and reported it to the IRS under requirements applicable to it. At the bottom of the front of the form, under the heading "Important Messages," it states:

This 2011 Form 1099–A contains important tax information for year ending 12/31/11. Please refer to the back of the statement for other important notices and instructions. As required, your 2011 Form 1099–A information will be reported to the Internal Revenue Service. Please consult with your tax advisor or the Internal Revenue Service for any tax-related questions.

On the back of the form, under the heading "Instructions for Borrower," it states:

Certain lenders who acquire an interest in the property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. . . . See Pub. 4681 for information about foreclosures and abandonments.

Nothing in the summary judgment record reflects any contact or communication between Freddie Mac and the Plaintiffs post-foreclosure regarding the effect of the foreclosure other than the delivery of IRS Form 1099–A. Nothing on the form demands any payment or even states that taxable income must be reported. The language on the form, drafted by the IRS, not Freddie Mac, refers to the content of the form as "tax information" that has been reported to the IRS, which may result in reportable income or loss for the 2011 tax year. Nothing in the form constitutes a threat to the Plaintiffs by Freddie Mac, or sets forth directly or indirectly any adverse alternatives that could be avoided by payment of a discharged debt. Thus, despite the Plaintiffs' statements that they were "devastated" when they received the form and were "terrified" that they would owe additional income tax unless they resolved the matter with either Citi or Freddie Mac, there was no objective basis for the Plaintiffs to believe that the Defendants were attempting to collect a discharged debt. The summary judgment record does not support any factual or legal basis to find a violation of the discharge injunction based on the delivery of IRS Forms 1099–A to the Plaintiffs. Accordingly, the Court hereby denies the Plaintiffs' request for partial summary

judgment with respect to Count V and grants the Defendants' request for summary judgment as to Count V.

## COUNT VI

■ Count VI alleges that Citi contacted the Plaintiffs in June of 2013 in an attempt to coerce the Plaintiffs into paying the discharged debt. The summary judgment record reflects no disagreement that one telephone call was made by Citi to the Plaintiffs more than two years after the foreclosure. Citi contends it was made in error and, under the totality of the circumstances, cannot constitute coercion or harassment of the Plaintiffs.

The summary judgment record reveals that the telephone call in question requested proof of insurance on the Plaintiffs' former residence. The agent indicated that the Plaintiffs "were still responsible under the mortgage to pay for property insurance on [their] former homestead." In their affidavits, the Plaintiffs state that the phone call from Citi "was very upsetting to us" and "it seemed we would never be free from the debt to CitiMortgage." They state further that "[i]t was also upsetting as we continued to be under financial stress, so that the CitiMortgage representative's demand that we pay for insurance on the foreclosed homestead was yet another financial burden we could not face." Additionally, the Plaintiffs state that "there was no reason whatsoever for CitiMortgage or Freddie Mac to contact us" and they "should not have had to deal with such a demand." The Plaintiffs contend that the Defendants' actions, in total, "placed a huge strain on [their] marriage and caused [them] to suffer considerable emotional distress."

The summary judgment record is clear that Citi contacted the Plaintiffs in June of 2013, long after the Plaintiff's personal liability associated with the note was discharged on April 2, 2009, and long after the mortgage debt was extinguished pursuant to a foreclosure of the Plaintiffs' residence, which occurred in April of 2011. At the time that Citi contacted the Plaintiffs, Citi no longer held a security interest in any property of the Plaintiffs. For that reason, § 524(j) does not apply. Because Citi contacted the Plaintiffs about an obligation that was either discharged under the note and/or extinguished by foreclosure of the mortgage, the Court finds that the contact by Citi in June of 2013 violated the discharge injunction. For that reason, the Court hereby denies the Defendants' request for summary judgment as to Count VI and grants the Plaintiffs' request for partial summary judgment on Count VI, with respect to liability only. The Court will determine the issue of damages after an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Plaintiffs' MSJ is denied as to Counts I through V and granted as to Count VI with respect to liability only.

2. Defendants' MSJ is granted as to Counts I through V and denied as to Count VI. ENTERED at Manchester, New Hampshire.