**FILED**

**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**October 22, 2015**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

---

| | |
|---|---|
| IN RE TIMMY DEWAYNE JESTER, also known as Tim D. Jester, and REBECCA JO JESTER, also known as Becky Jo Jester, formerly known as Rebecca Jo Hillsberry, formerly known as Becky Jo Hillsberry, <br><br> Debtors. | BAP No.   EO-15-002 |
| TIMMY DEWAYNE JESTER and REBECCA JO JESTER, <br><br> Appellants, <br><br> v. <br><br> WELLS FARGO BANK N.A., <br><br> Appellee. | Bankr. No.   11-80627 <br> Chapter   7 <br><br><br> OPINION* |

---

Appeal from the United States Bankruptcy Court
for the Eastern District of Oklahoma

---

Before **THURMAN**,  **JACOBVITZ**, and **HALL**, Bankruptcy Judges.

HALL, Bankruptcy Judge.

Filing bankruptcy will delay the foreclosure of a debtor's home, but it will not prevent it.  If a debtor wants to keep his home from foreclosure, he must come to terms with the mortgagee.

Timmy and Rebecca Jester, *pro se*, appeal the bankruptcy court's order that

---

\* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

denied his motion to reopen their Chapter 7 bankruptcy case. Mr. Jester had sought to reopen their case in order to, *inter alia*, file claims against Wells Fargo Bank N.A. ("Wells Fargo") for alleged violations of the automatic stay and the discharge injunction based mainly on: 1) its failure to dismiss a prepetition state foreclosure action upon being notified of their bankruptcy filing; 2) its misapplication of postpetition payments; and 3) its filing of a foreclosure action and obtaining a judgment against them postdischarge. After hearing oral arguments and reviewing the record and applicable law, we affirm the bankruptcy court's decision to deny the motion to reopen.

I. **Factual Background**[1]

Timmy and Rebecca Jester (collectively "Debtors") filed a no-asset, Chapter 7 case on April 29, 2011. They claimed their residence (the "Property") exempt and stated an intent to reaffirm the debt on it,[2] but no reaffirmation agreement was ever filed.[3] They received a discharge on July 27, 2011, and their case was closed on August 11, 2011.

Prepetition, Wells Fargo had initiated a foreclosure action on the Property in state court against Debtors and Mr. Jester's former wife on February 23, 2011 (the "2011 Foreclosure Action"). After their bankruptcy case closed, Mr. Jester executed a loan modification agreement with Wells Fargo (the "Modification

---

[1]     All references to Appellants' Appendix are to the third appendix they filed on March 30, 2015 ("Appellants' App."). Because Appellants did not consistently consecutively paginate their appendix, page number references are to the PDF page numbers as they appear in the appellate record. Thus, the reference "App. at 147" refers to page 147/273 of the PDF document in the record, as opposed to Appellants' designation of page 142. Page number references to Appendix of Appellee Wells Fargo Bank, NA ("Appellee's App.") are to the bates-stamp.

[2]     Form B8 at 2, *in* Appellants' App. at 29.

[3]     According to Debtors' former counsel, Jeremy Mix, Wells Fargo was unwilling to negotiate with or provide him with a reaffirmation agreement because Debtors were over $9,777 in arrears on their mortgage and had not made a payment since August 2010. Mix's Objection to Motion to Reopen Case at 1, *in* Appellee's App. at 4.

Agreement").[4]  The Modification Agreement provided, in pertinent part, that:

1.    Borrower filed for relief under Chapter [7] . . . on 04/29/2011.

2.    At the Borrowers request, the borrower and counsel for both parties agree to address the defaulted amount by means of a loan modification.

3.    Borrower received the consent of the United States Bankruptcy Court or equivalent, to modify the mortgage . . . [which] Borrower received or will receive a discharge of . . . on or about 07/27/11.

* * *

5.    Borrower, during the course of the bankruptcy case . . . , did not, and does not intend to reaffirm the debt.

6.    Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

7.    Borrower acknowledges and understands that [he] is not obligated to enter into this Agreement, and that [he] is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.  Borrower understands that [he] has no personal obligation to repay the debt secured by the Property if said debt is discharged in bankruptcy without a valid reaffirmation agreement.

* * *

10.   Borrower desires to retain the Property securing this debt, and Lender has agreed to such request, in exchange for payment to Lender of the debt secured by the Property in the manner specified herein . . . .  Borrower and Lender jointly agree [*inter alia*] as follows:

* * *

4.    [C]osts and expenses, together with accrued interest, in the total amount of $12,791.87 have been added to the . . . Note . . . and that as of 10/01/2011, . . . [the unpaid principal balance on the Note] is $147,702.34.

5.    [I]nterest will be charged on the unpaid principal balance at the yearly rate of 4.500% beginning 10/01/2011.  The Borrower shall make monthly

_____

[4]    Modification Agreement, *in* Appellants' App. at 209-12.  The agreement was made  effective on August 23, 2011 and signed by Mr. Jester on October 6, 2011.

payments of . . . $748.39 . . . beginning on 11/01/2011 and . . . thereafter on the same day of each succeeding month until [the Note is paid in full] . . . .

\* \* \*

9.     If Borrower fails to pay . . . the amount due and owing or to pay any monthly payment . . . , Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property . . . pursuant to its security interest and lien and applicable law.[5]

Shortly after the Modification Agreement was executed, Wells Fargo filed a Release of Notice of Pending Action and the 2011 Foreclosure Action was dismissed on November 3, 2011.[6]

Debtors stopped making payments on the Property in November 2011.[7] Wells Fargo filed a foreclosure petition against Debtors in Wagoner County District Court on July 6, 2012 (the "2012 Foreclosure Action").[8] Although Debtors contested the foreclosure, summary judgment in favor of Wells Fargo and against Debtors was entered on October 8, 2014 (the "Foreclosure Judgment").[9]

Timmy Jester filed a motion to reopen the Debtors' bankruptcy case on October 28, 2014 (the "Motion"). The bankruptcy court succinctly summarized

---

[5]     Modification Agreement at 1-4, *in* Appellants' App. at 209-12.

[6]     Release of Notice of Pending Action, *in* Appellants' App. at 196; Motion to Reopen Case at 30, *in* App. at 62.

[7]     Unofficial Tr. of Dec. 10, 2014 Hrg. at 6, *in* Appellee's App. at 20 ("Court: When was the last time you paid the payment in this case, Mr. Jester? Timmy Jester: November 2011").

[8]     Objection of Wells Fargo Bank, NA, Successor by Merger to Wells Fargo Home Mortgage, Inc., to Debtor's Motion to Re-open Case ("Wells Fargo's Objection to Motion to Reopen") at 1, ¶ 2, *in* Appellee's App. at 6; Ex. A, On Demand Court Records ("2012 Foreclosure Action Dkt") at 1, *in* Appellee's App. at 9.

[9]     2012 Foreclosure Action Dkt at 3, *in* Appellee's App. at 11. The Foreclosure Judgment itself was not presented to the bankruptcy court nor included in the appellate record.

the Motion as follows:

> The Motion requests that this Court reopen Debtor's bankruptcy case so that he can file an adversary proceeding against Wells Fargo Bank, his bankruptcy attorney Jeremy S. Mix, and attorneys Ben Callicoat and Cliff Baker. He alleges that Wells Fargo violated the automatic stay and discharge injunction by foreclosing on his mortgage, and he alleges a multitude of violations of various state and federal laws. He wants . . . Wells Fargo [held] in contempt, and [] punitive damages [assessed] against it. He alleges violations of federal law, including the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Federal Discovery Code.. He also alleges violations of Oklahoma law, including violations of the Oklahoma Constitution, the Oklahoma Discovery Code, and Oklahoma lien laws. Other allegations include intentional infliction of emotional distress, fraud, robo-signing, and misapplication of payments. . . . Essentially, he wants this Court to set aside the state foreclosure action and release the lien on his home, asserting that his debt to Wells Fargo was discharged in bankruptcy and the attempt to foreclose on the mortgage post-discharge is a violation of the automatic stay and discharge injunction.[10]

The Trustee, Wells Fargo, and Debtors' bankruptcy attorney (Jeremy Mix) filed objections to the Motion. They countered that reopening the case was futile.

A hearing on the Motion was held on December 10, 2014.[11] The bankruptcy court issued an order denying the Motion on December 30, 2014, concluding that: 1) there was no violation of the automatic stay or discharge injunction by Wells Fargo; and 2) there was no relief that it could provide to Debtors.[12] Additionally, the bankruptcy court found that it had no authority to set aside the mortgage lien or review a final, state court judgment.[13] This appeal followed.

II.    **Appellate Jurisdiction and Standard of Review**

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit,

---

[10]    Order Denying Motion to Reopen at 2-3, *in* Appellants' App. at 148-49.

[11]    Unofficial Tr. of Dec. 10, 2014 Hrg., *in* Appellee's App. at 15-21.

[12]    Order Denying Motion to Reopen, *in* Appellants' App. at 147-51.

[13]    *Id.* at 4, *in* Appellants' App. at 150.

unless one of the parties elects to have the district court hear the appeal.[14] Debtors timely filed a notice of appeal[15] from the Order Denying Motion to Reopen, a final order.[16] The parties have consented to this Court's jurisdiction by not electing to have this appeal heard by the United States District Court for the Eastern District of Oklahoma. This Court, therefore, has appellate jurisdiction over this appeal.

This Court reviews a bankruptcy court's decision on a motion to reopen a closed case under 11 U.S.C. § 350(b)[17] for an abuse of discretion.[18] "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[19] "Whether a party's actions have violated the automatic stay is a question of law which is reviewed *de novo*."[20] "Whether a creditor's actions violated the discharge injunction is also a question of law subject to *de novo*

---

[14]     28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8001(e) (now at Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001-3 (now at 10th Cir. BAP L.R. 8005-1, effective Dec. 1, 2014).

[15]     This Court construes the initial Notice of Appeal, filed within 14 days of the order appealed from, as filed on behalf of both Timmy and Rebecca Jester even though it was signed only by Mr. Jester. *See* Fed. R. App. P. 3(c)(2) ("A pro se notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children (if they are parties), unless the notice clearly indicates otherwise.").

[16]     *In re Riazuddin*, 363 B.R. 177, 182 (10th Cir. BAP 2007) (order denying motion to reopen was a final order for purposes of 28 U.S.C. § 158(a)).

[17]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[18]     *In re Woods*, 173 F.3d 770, 778 (10th Cir. 1999); *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010).

[19]     *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[20]     *Diviney v. Nationsbank of Texas, N.A. (In re Diviney)*, 225 B.R. 762, 769 (10th Cir. BAP 1998) (quoting *Barnett v. Edwards (In re Edwards)*, 214 B.R. 613, 618 (9th Cir. BAP 1997)).

review."[21]  Likewise, we review the application of the *Rooker-Feldman* doctrine *de novo*.[22]  *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[23]

## III.  Analysis

The main issue in this appeal is whether the bankruptcy court abused its discretion in denying Debtors' motion to reopen their bankruptcy case to file claims against Wells Fargo.  Resolution of this issue requires us to determine 1) whether Wells Fargo violated the automatic stay or discharge injunction, and 2) whether the bankruptcy court could provide Debtors with the requested relief of releasing the mortgage lien on the Property and permanently enjoining Wells Fargo from asserting any claims against the Property.[24]  We answer these questions in the negative and affirm the bankruptcy court's decision.

**A.     The bankruptcy court correctly concluded that Wells Fargo did not violate the automatic stay or discharge injunction.**

**1.     No automatic stay violation**

Section 362(a) of the Bankruptcy Code automatically imposes a stay of a number of actions immediately upon the filing of a bankruptcy petition.[25]  Among other activities, while the automatic stay is in effect, creditors may not commence or continue an action against the debtor that was or could have been commenced before the filing of the bankruptcy case.[26]  Nor are creditors allowed to collect or

---

[21]     *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 668 (10th Cir. BAP 2012).

[22]     *In re Miller*, 666 F.3d 1255, 1260 (10th Cir. 2012).

[23]     *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

[24]     Motion, Prayer ¶¶ 4 and 8 at 66-67, *in* Appellants' App. at 97-98.  The remaining prayers were for monetary damages.

[25]     11 U.S.C. § 362(a).

[26]     11 U.S.C. § 362(a)(1).  The 2011 Foreclosure Action was filed prepetition,
(continued...)

enforce a prepetition claim.[27] "A debtor alleging a [willful] violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed and that the debtor suffered damage as a result of the violation."[28]

Debtors claim that Wells Fargo violated the automatic stay by 1) failing to dismiss the 2011 Foreclosure Action upon receiving notice of Debtors' bankruptcy filing, 2) negotiating the Modification Agreement and coercing Mr. Jester to sign it, and 3) harassing them by phone and mail while aware of their bankruptcy.[29] Like the bankruptcy court, we see no violation of the automatic stay based on these allegations. First, there is no affirmative duty to dismiss a prepetition foreclosure action upon learning the defendant filed a bankruptcy petition.[30] The automatic stay prevents prosecution of the foreclosure action, but does not require its dismissal. In other words, the creditor must refrain from any activity that would move the case forward in the legal process. In this case, there is nothing in the record to indicate that Wells Fargo took any action to continue the 2011 Foreclosure Action while the automatic stay was in effect. Thus, the bankruptcy court correctly concluded that Wells Fargo's failure to dismiss the 2011 Foreclosure Action upon notice of Debtors' bankruptcy filing did not constitute an automatic stay violation.

---

[26]     (...continued)
thus its commencement did not violate the automatic stay.

[27]     11 U.S.C. § 362(a)(2)-(6).

[28]     *Kline v. Tiedemann (In re Kline)*, 424 B.R. 516, 524 (Bankr. D. N.M. 2010) citing *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007); *see also In re Scroggin*, 364 B.R. 772, 780 (10th Cir. BAP 2007).

[29]     Appellants' Br. at 15; Appellants' Reply Br. at 3.

[30]     *In re Long*, No. 07-60011, 2009 WL 981134 at *5 (Bankr. D. Mont. Jan. 9, 2009) (obligation to "discontinue" collection proceedings permits staying rather than dismissing the proceeding if proceeding was commenced prepetition).

Second, the automatic stay of any action other than an action against property of the estate terminates upon the earliest of: (A) the time the case is closed; (B) the time the case is dismissed; or (C) in an individual Chapter 7 case, the time a discharge is granted or denied.[31] In this case, the earliest of the identified events was the granting of Debtors' Chapter 7 discharge on July 27, 2011. The Modification Agreement was entered after the automatic stay had terminated.[32] Thus, its entry did not constitute an automatic stay violation.[33]

As for the harassing phone calls and mail, there is no evidence in the record detailing them.[34] Even if they occurred, they appear to have been made in 2013 and 2014, well after the automatic stay had terminated.[35] Accordingly, these contacts could not constitute automatic stay violations. In sum, the bankruptcy court correctly concluded that Wells Fargo did not violate the automatic stay.

---

[31] 11 U.S.C. § 362(c)(2). The automatic stay remains in place as to property of the estate until the property is no longer property of the estate. *See* 11 U.S.C. § 362(c)((1).

[32] Because there is nothing in the record detailing the negotiation of the Modification Agreement, our stay violation analysis is limited to its entry date.

[33] *In re Houlik*, 481 B.R. 661, 669-70 (10th Cir. BAP 2012) (no automatic stay violation where stay had terminated prior to repossession of truck). *See also Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 472 B.R. 98, 103-04 (10th Cir. BAP 2012), *aff'd*, 514 F.App'x 810 (10th Cir. 2013) ("[A]ny actions Defendants took after . . . dismissal of Debtor's case, by definition, do not constitute stay violations."). Because the Modification Agreement was executed postdischarge, we will address Debtors' complaints regarding it in the discharge injunction section.

[34] None of the letters mentioned in the Motion were presented to the bankruptcy court. Factual allegations in the Motion are not evidence. *Collins v. Jackson Pub. Sch. Dist.*, 609 F.App'x 792, 795 (5th Cir. 2015) ("Arguments in briefs, like allegations in a complaint, are assertions, not evidence."); *Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) (mere allegations of a complaint are not evidence) (citations omitted).

[35] *See* Motion, *in* Appellants' App. at 58 ("Wells Fargo Bank N.A. kept calling Mr. Jester . . . to send more information for a new [l]oan [m]odification."), 66 (Wells Fargo representative, Adriann Rey, repeatedly called Mr. Jester), 92 ("Wells Fargo Bank N.A. repeatedly called Mr. Jester in 2013 and 2014 . . . .").

## 2. No violation of the discharge injunction

Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ."[36] The discharge injunction does not constitute a blanket prohibition against all actions undertaken by creditors after the entry of discharge. Actions to collect against the debtor personally are enjoined. In contrast, *in rem* actions, which include actions to enforce a lien against encumbered property, are not prohibited by the discharge injunction.[37] The debtor bears the burden of proving that the creditor willfully violated the discharge injunction by clear and convincing evidence.[38]

### a. The Modification Agreement did not violate the discharge injunction.

Debtors claim that Wells Fargo violated the discharge injunction by attempting to collect a discharged debt through the Modification Agreement, which was invalid because it was not approved by the bankruptcy court. They further claim that Wells Fargo coerced them into signing the Modification Agreement. Debtors' arguments here are unpersuasive.

While it is understandable that Debtors felt that they had no choice but to

---

[36]    11 U.S.C. § 524(a)(2).

[37]    *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim -namely, an action against the debtor *in personam*—while leaving intact another -namely, an action against the debtor *in rem*"); *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (per curiam) (discharge injunction does not preclude *in rem* actions by secured creditors); 3 Hon. William L. Norton Jr. & William L. Norton III, Norton Bankr Law & Prac. § 58:4 (3d ed. 2015) ("[Section] 524 does not bar the creditor from enforcing a valid, prebankruptcy lien or security interest against property that has been retained . . . by the debtor after discharge.").

[38]    *Otero v. Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313, 319 (Bankr. D. N.M. 2013).

sign the Modification Agreement to avoid foreclosure based on prepetition defaults, the record is devoid of facts suggesting that Mr. Jester's execution of the Modification Agreement was anything but voluntary.[39] The agreement itself contains several provisions indicating voluntariness. Paragraph 2 of the agreement states the loan modification was at Debtors' request.[40] Paragraph 7 states:

> Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property. Borrower understands that he/she has no personal obligation to repay the debt secured by the Property if said debt is discharged in bankruptcy without a valid reaffirmation agreement.[41]

And contrary to Debtors' assertion, court approval of the Modification Agreement was not required because it is not a reaffirmation agreement that requires court approval. A reaffirmation agreement is a contract between a debtor and a creditor where the debtor agrees to reassume the *in personam* liability of a dischargeable debt in order to keep the property for which the debt was incurred while making periodic payments on that property.[42] The Modification Agreement repeatedly provided that it does not revive or create any personal liability on a discharged debt. Paragraph 10.3 states:

> Borrower and Lender acknowledge and agree that this Modification Agreement does not affect the discharge of the Borrower's personal

---

[39] A Wells Fargo representative telling them that they would lose their home if they did not sign the agreement is not coercion, but simply a statement of fact.

[40] Modification Agreement at 1, *in* Appellants' App. at 209 ("At the Borrowers [sic] request, the borrower and counsel for both parties agree to address the defaulted amount by means of a loan modification."). This comports with this Court's general understanding that borrowers must apply for a loan modification.

[41] *Id.*

[42] *In re Schott*, 282 B.R. 1, 7 (10th Cir. BAP 2002). A reaffirmation agreement must be made before the granting of the debtor's discharge. 11 U.S.C. § 524(c)(1). The Modification Agreement was executed postdischarge, which is another indication it was not a reaffirmation agreement.

liability on the debt.[43]

Paragraph 10.6 states:

> Notwithstanding any monthly payments hereunder, Borrower understands that (1) Lender's sole recourse is the enforcement of its security interest in the Property and any action which may exist in relation to the Property itself and that (2) nothing in this Agreement revives or purports to revive any debt, or create any personal liability or obligation for a debt that was discharged in bankruptcy.[44]

Paragraph 10.11 states:

> NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO BE A WAIVER OF THE BORROWER'S DISCHARGE, AN ATTEMPT TO COLLECT AGAINST THE BORROWER PERSONALLY, OR AN ATTEMPT TO REVIVE PERSONAL LIABILITY.[45]

The Modification Agreement was a contract where Debtors agreed to make periodic payments in exchange for Wells Fargo's forbearance of its right to foreclose on its lien.[46] Because the Modification Agreement did not attempt to make Debtors personally liable for the discharged mortgage debt, the bankruptcy court correctly concluded that the Modification Agreement did not constitute a violation of the discharge injunction.[47]

---

[43] Modification Agreement at 2, *in* Appellants' App. at 210.

[44] *Id*.

[45] *Id.* at 4, *in* App. at 211.

[46] Paragraph 10.2 of the agreement states, "Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligations thereunder." *Id*. at 2, *in* App. at 210.

[47] *See Bates v. CitiMortgage, Inc. (In re Bates)*, 517 B.R. 395, 400 (Bankr. D. N.H. 2014) (loan modification agreement with similar language did not violate discharge injunction; it was a contact permitted postdischarge under § 524(j)). Section 524(j) excepts from the discharge injunction acts by creditors if "(1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and the debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." Wells Fargo did not argue to the bankruptcy court,

(continued...)

### b. Filing an *in rem* action and obtaining an *in rem* judgment did not violate the discharge injunction.

Debtors claim that Wells Fargo violated the discharge injunction by filing the 2012 Foreclosure Action and obtaining judgment against them. As an initial matter, we note that neither the foreclosure petition nor the Foreclosure Judgment were presented to the bankruptcy court or to this Court, which made it difficult for this Court to determine the exact nature of the state action. The 2012 Foreclosure Action docket sheet, however, sufficiently supports the bankruptcy court's conclusion that Wells Fargo had filed an in rem foreclosure action.[48] The docket sheet indicated the "Offense or Cause" as "Foreclosure."[49] Additionally, at oral arguments, Debtors conceded that the Foreclosure Judgment was *in rem* only. Because the discharge injunction does not preclude *in rem* actions by secured creditors, the bankruptcy court correctly concluded that commencing the 2012 Foreclosure Action and obtaining the Foreclosure Judgment did not constitute violations of the discharge injunction.[50]

### c. The alleged misapplication of postpetition payments

---

[47]     (...continued)
and does not argue on appeal, that its conduct in connection with the Modification Agreement was protected by § 524(j), Accordingly, we need not consider whether § 524(j) applies. *Venture Bank v. Lapides*, 800 F.3d 442, 447 n. 3 (8th Cir. 2015) (appellate court refused to consider whether § 524(j) exception applied because bank did not raise it below or on appeal).

[48]     2012 Foreclosure Action Dkt. at 1-4 , *in* Appellee's App. at 9-12.

[49]     *Id.* at 1, *in* Appellee's App. at 9; *see In re Weinhold*, 393 B.R. 623, 631 (Bankr. E.D. Wis. 2008) (a foreclosure action is generally an *in rem* proceeding); *Sooner Fed. Sav. & Loan Ass'n v. Oklahoma Cent. Credit Union*, 790 P.2d 526, 530 n.18 (Okla. 1989) ("As a general rule, a decree of foreclosure is *in rem* . . . ."); *Bank of Wilson v. Hartman*, 785 P.2d 338 (Okla. Civ. App. 1989) (an action in foreclosure is in rem).

[50]     *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (per curiam) (discharge injunction does not preclude *in rem* actions by secured creditors); 3 Hon. William L. Norton Jr. & William L. Norton III, Norton Bankr Law & Practice § 58:4 (3d ed. 2015) ("[Section] 524 does not bar the creditor from enforcing a valid, prebankruptcy lien or security interest against property that has been retained . . . by the debtor after discharge.").

## did not constitute a violation of the discharge injunction.

Debtors claim that Wells Fargo violated the discharge injunction by not properly crediting postpetition payments under the Modification Agreement as required by § 524(i).[51] They also claim that "[Wells Fargo] charged [them] $13,000 in late fees and appraisal fees that were discharged in Bankruptcy."[52] Section 524(i) provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.[53]

The Modification Agreement was not a plan confirmed under the Code, thus § 524(i) does not apply.

As to Debtors' claim that $13,000 was added to a discharged debt, it is based on paragraph 10.4 of the Modification Agreement, which states that:

> Borrower acknowledges that the Lender has incurred, paid, or otherwise advanced taxes, insurance premiums, and other expenses necessary to protect or enforce its security interest in the Note and Security Instrument and that such costs and expenses, together with accrued interest, in the total amount of $12,791.87 have been added to the indebtedness under the terms of the Note and Security Instrument, and that as of 10/01/2011, . . . [the Unpaid Principal Balance] is [] $147,702.34.[54]

Because these charges are associated with the enforcement of Wells Fargo's security interest, they were a part of Wells Fargo's *in rem* claim and not an attempt to increase a debt discharged in bankruptcy. Even if we construed

---

[51]    Motion at 6, *in* Appellants' App. at 38; Attachment [in Support of Motion] at 5, *in* App. at 104; Appellants' Br. at 17, 20.

[52]    Appellants' Br. at 17.

[53]    11 U.S.C. § 524(i).

[54]    Modification Agreement, ¶10.4 at 2, *in* Appellants' App. at 210.

paragraph 10.4 as Debtors suggest, that provision must be read in conjunction with the other provisions in the agreement. As discussed previously, the Modification Agreement did not make Debtors personally liable for any debt secured by the Property. Thus, paragraph 10.4 of the Modification Agreement did not constitute a violation of the discharge injunction.

**B.    The bankruptcy court correctly concluded that it could not provide any relief to Debtors.**

Debtors requested monetary damages for violations of the automatic stay and discharge injunction, release of the lien on the Property, and a permanent injunction to prevent Wells Fargo from asserting any claims against the Property.[55] Having concluded that there were no violations of the automatic stay or discharge injunction, we need only address the latter two types of requested relief.

**1.    The bankruptcy court cannot set aside the lien on the Property.**

Generally, to finance the purchase of a home, debtors will execute at least two documents: a promissory note and a mortgage against the property. A promissory note is a promise to pay the debt incurred to procure the property. "A mortgage is an interest in real property that secures a creditor's right to repayment."[56] "A mortgage is a consensual lien [or security interest] since it is created by agreement."[57] This is exactly the case here – to finance the purchase of the Property, Debtors executed a note and granted a lien against the Property. What Debtors stubbornly refuse to understand and accept is the concept that the

---

[55]    Motion at 65-67, *in* Appellants' App. at 96-98.

[56]    *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991).

[57]    *In re Sun 'N Fun Waterpark, LLC*, 408 B.R. 361, 370 (10th Cir. BAP 2009). The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A "security interest" is a "lien created by an agreement." 11 U.S.C. § 101(51).

debt and the lien are treated distinctly in bankruptcy. The debt was discharged,[58] but the lien survived bankruptcy.[59]

Generally, a lien on real property passes through bankruptcy unaffected and "stays with the real property until the foreclosure," based on the bargained-for agreement between a mortgagor and mortgagee.[60] This is true unless the lien is avoided or modified in bankruptcy.[61] Here, neither Debtor nor the Chapter 7 trustee challenged the lien on the Property during the bankruptcy case.[62] Debtors' suggestion that Well Fargo's failure to file a proof of claim somehow invalidates the lien on the Property contradicts § 506(d) and case law. Section 506(d) provides that a lien securing a claim against a debtor will not be void just because no entity filed proof of that claim under § 501.[63] Additionally, the United States Supreme Court has held that a lien holder is not required to file a proof of claim or otherwise participate in a bankruptcy case in order to protect his lien.[64]

---

[58] The grant of a discharge does not extinguish any debt, it simply prevents any act to collect the debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2); *Johnson*, 501 U.S. at 84.

[59] *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992) (a lien on real property passes through bankruptcy unaffected); *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy").

[60] *Dewsnup*, 502 U.S. at 417.

[61] *Id.* at 417-18 (lien unaffected subject, of course, to the power of other persons or entities to pull lien holder into the proceeding pursuant to § 501); *In re Picht*, 428 B.R. 885, 891-92 (10th Cir. BAP 2010) ("The United States Supreme Court has repeatedly held that liens pass through Chapter 7 bankruptcy unaffected, and the debt secured by the lien continues to exist and is enforceable against property securing the debt (unless, of course, the lien is avoided).").

[62] *See In re Lowther*, 52 F.App'x 476 (10th Cir. 2002) (debtor's ex-husband's lien granted through divorce decree was not extinguished by debtor's bankruptcy discharge even though ex-husband did not file proof of claim or properly perfect lien under state law, where debtor listed her debt to ex-husband only as unsecured claim and failed to avoid lien in her bankruptcy case).

[63] 11 U.S.C. § 506(d)(2).

[64] *See Dewsnup,* 502 U.S. at 417-18; *Chandler Bank of Lyons v. Ray*, 804 F.2d

(continued...)

Finally, Debtors cite no statutory authority to avoid the lien on the Property.[65]

Even if there was a statutory basis to avoid the lien on the Property, it is now too late.[66]  Because the lien on the Property remained intact, the bankruptcy court correctly concluded that it could not now set aside the lien.[67]

### 2. The bankruptcy court cannot review the Foreclosure Judgment.

The *Rooker–Feldman* doctrine[68] provides that lower federal courts, such as bankruptcy courts, lack jurisdiction to engage in appellate review of "claims 'actually decided by a state court' and claims 'inextricably intertwined with a prior state-court judgment.'"[69]  As described by the Supreme Court:

> The *Rooker–Feldman* doctrine . . . is confined to cases of the kind

---

[64]    (...continued)
577, 579 (10th Cir. 1986).

[65]    *See* 11 U.S.C. § 522(f) (granting debtor power to avoid judicial lien that impairs exemption); 11 U.S.C. § 544 (granting the trustee the power to avoid unperfected liens).  "An individual debtor may . . . exercise section 544 avoiding powers only in the limited circumstances outlined in section 522(h)".  5 Collier on Bankruptcy ¶ 544.07[4], at 544-32 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Section 522(h), however, limits the debtor's ability to avoid a lien to situations where the transfer was involuntary.  Because Debtors voluntarily granted the lien on the Property, they lack standing to avoid it under § 544.  Likewise, § 522(f) is not applicable because the lien at issue is not a judicial lien.  *See In re Nichols*, 265 B.R. 831 (10th Cir. BAP 2001) (consensual mortgage lien was not transformed into judicial lien by virtue of state court's foreclosure decree); *In re Ruck*, 451 B.R. 128, 131-32 (Bankr. D. Kan. 2011) (even if mortgage "merged" into foreclosure decree, it did not convert consensual lien of mortgage to judicial lien).

[66]    *See Smiley v. Assocs. Fin'l Servs. (In re Smiley)*, 26 B.R. 680, 683 (Bankr. D. Kan. 1982) (motion to avoid a lien filed postdischarge deemed untimely; motion must be filed prior to the granting of a discharge to effectively carry out the Code and provide some finality to a bankruptcy case and to the fixed right of all parties).

[67]    The issue of who holds the lien is distinct from whether a lien exists against the Property.

[68]    *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[69]    *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002)).

from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine . . . . [70]

The Tenth Circuit has applied the *Rooker-Feldman* doctrine to bar claims that are inextricably intertwined with foreclosure decisions.[71]

Here, Wells Fargo brought the 2012 Foreclosure Action in state court and obtained a judgment against Debtors. Then, Debtors, the "state-court losers," turned to the bankruptcy court and asked it to enjoin Wells Fargo from asserting any claims against the Property.[72] They challenged Wells Fargo's documentation to foreclose and claimed that Wells Fargo was not the true lien holder, thereby lacking standing to commence the foreclosure action.[73] They sought monetary damages against Wells Fargo for its "[i]nappropriate and costly mistakes," release of the lien on the Property, as well as an injunction against Wells Fargo from asserting any claims on the Property.[74] All of Debtors' injuries are based on the Foreclosure Judgment.

"To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the [mortgage] . . . ."[75] Although the Foreclosure Judgment is not a part of the record, we can presume it included

---

[70]    *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

[71]    *Dillard v. Bank of N.Y.*, 476 F.App'x 690, 692 (10th Cir. 2012); *Orcutt v. Libel*, 381 F.App'x 866, 868-69 (10th Cir. 2010).

[72]    *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

[73]    Debtors argue that they can challenge standing at any time during the judicial process. Appellants' Br. at 23. What Debtors fail to recognize is that the 2012 Foreclosure Action and the bankruptcy case are two different judicial proceedings. Debtors must raise the issue of Wells Fargo's standing to file the 2012 Foreclosure Action in the court where the action was filed.

[74]    Motion, Prayer ¶¶ 4, 7, and 8 at 66-67, *in* Appellants' App. at 97-98.

[75]    *Deutsche Bank Nat'l Tr. v. Brumbaugh*, 270 P.3d 151, 154 (Okl. 2012).

findings of every material fact necessary to support the judgment.[76] Thus, we presume the state court concluded that Wells Fargo had standing to enforce the mortgage. Debtors' claims based on the inadequacy of the foreclosure documentation, the nonapplication of payments, and Wells Fargo's alleged violation of the Real Estate Settlement Procedures Act and the Truth in Lending Act are issues that are inextricably intertwined with the state court proceedings because a determination on them would invariably require the bankruptcy court to review and reject the Foreclosure Judgment.[77] The Rooker-Feldman doctrine bars such a review. Thus, the bankruptcy court correctly concluded that it lacked jurisdiction to review the Foreclosure Judgment.

**C.     The bankruptcy court did not abuse its discretion in refusing to reopen Debtors' case.**

Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."[78] Bankruptcy courts have broad discretion to reopen a case.[79] "A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed

---

[76]     *KMC Leasing, Inc. v. Rockwell-Standard Corp.*, 9 P.3d 683, 688-89 (Okla. 2000) (absent explanation of the ruling by the trial court and absent a record to the contrary, appellant court will presume the trial court found every special thing necessary to sustain the general finding and conclusion).

[77]     *Dillard*, 476 F.App'x at 691. (claims challenging bank's documentation to foreclose and alleging that bank used deceptive tactics in its pursuit of mortgaged property were barred by *Rooker-Feldman* doctrine as they effectively sought review and rejection of foreclosure proceedings); *Orcutt,* 381 F.App'x at 866. (claims that foreclosures were illegal and that sought an injunction and damages are inextricably intertwined with foreclosure decisions because they assert injuries based on the state court decision and to prevail, would require the district court to review and reject those decisions); *In re Kline*, 472 B.R. 98, 106 (10th Cir. BAP 2012) (even though debtor did not ask for direct reversal of foreclosure judgment, the relief and arguments presented would necessarily require the bankruptcy court to reject the foreclosure judgment, thus debtor was barred by the *Rooker-Feldman* doctrine from attempting to relitigate propriety of creditor's conduct).

[78]     11 U.S.C. § 350(b).

[79]     *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995); *In re Petroleum Prod. Mgmt., Inc.*, 282 B.R. 9, 13 (10th Cir. BAP 2002).

will not abuse its discretion if it cannot afford the moving party any relief in the reopened case."[80]  If substantive relief cannot be granted, then reopening a case would be futile and a waste of judicial resources.[81]  This is exactly the case here.

Debtors asked the bankruptcy court to 1) sanction Wells Fargo for violations of the automatic stay and discharge injunctions, 2) release the lien on the Property, and 3) set aside the Foreclosure Judgment.  Because Debtors are not entitled to any such relief, it would have been futile to reopen their bankruptcy case.[82]  Accordingly, the bankruptcy court did not abuse its discretion in denying the motion to reopen.

## IV.  Conclusion

Because the bankruptcy court properly found Wells Fargo did not violate the automatic stay or the discharge injunction and that it lacked jurisdiction to review the Foreclosure Judgment, it did not abuse its discretion in denying Debtors' Motion to Reopen.  Accordingly, we affirm the bankruptcy court's decision.[83]

---

[80]     *In re Schicke*, 290 B.R. 792, 798 (10th Cir. BAP 2003).

[81]     *In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995).

[82]     *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 835 (8th Cir. BAP 2010) (affirming the bankruptcy court's denial of a motion to reopen on the basis that reopening the case would have been futile and a waste of judicial resources because the doctrine of res judicata precluded review of the state judgment, which was exactly the relief the appellants sought).

[83]     We grant Wells Fargo's motion to strike (BAP ECF No. 33) certain documents from Appellants' Appendices because they were not before the bankruptcy court at the time of its decision. *Adams v. Royal Indem. Co.*, 99 F.3d 964, 967 n.3 (10th Cir. 1996) (court should strike documents in appendix not presented to trial court); *Aero–Med., Inc. v. United States*, 23 F.3d 328, 329 n.2 (10th Cir. 1994) (court should strike documents in appendix not presented to trial court).